15908

**WILLIAMS v. CAPITAL LIFE & HEALTH INSURANCE CO.**
(41 S. E. (2d) 208)

*Messrs. A. W. Holman* and *D. McK. Winter,* of Columbia, for Appellant,

*Mr. Frank M. Turner,* of Columbia, for Respondent,

January 24, 1947.

MR. CHIEF JUSTICE BAKER delivered the unanimous opinion of the Court.

In January, 1938, the appellant (defendant below) issued a sick benefit policy to the respondent providing for the payment to the respondent of the sum of Three ($3.00)

Dollars per week in the event of sickness, upon conditions stated in the policy. There are five of such conditions, all expressed in a clause of the policy reading as follows (the numbers are interpolated) :

"Clause 6. Weekly benefits for sickness will be paid (1) for each period of seven consecutive days, (2) while the Insured is totally disabled by sickness from performing or giving any attention whatever to his or her usual or other ˚occupation; and (3) necessarily confined to bed and (4) there visited professionally by a duly licensed and practicing physician. (5) A certificate must be furnished by the Insured signed by the physician at the beginning of each week of such disability, setting forth the nature of illness and probable duration."

In July, 1945, the respondent became ill. She presented to the appellant a claim for sick benefits in the amount of Three ($3.00) Dollars, covering a week of her illness. The appellant refused to pay the claim, following which the present action was brought to recover Five Hundred ($500.00) Dollars actual and punitive damages.

The facts being undisputed, the trial Judge directed a verdict in favor of the appellant with respect to punitive damages, and a verdict in favor of the respondent for Three ($3.00) Dollars as actual damages.

The matter comes before this Court upon exceptions which raise the single question whether the respondent complied with that provision of the policy (quoted above) which requires attendance upon the insured "by a duly licensed and practicing physician," and the issuance of a certificate by such physician at the beginning of each week of the alleged disability. The respondent here was attended by a practitioner of that school of medicine which is known as naturopathy, and the required physician's certificate upon which the respondent's claim is based was signed by such practitioner. It is the position of the appellant that such a

practitioner is not a "duly licensed and practicing physician" within the meaning or contemplation of the controlling policy provision above quoted.

Section 5162 of the Code provides that persons qualified in the various healing or medical arts therein described, including naturopathy, may practice their professions upon obtaining a license in the manner therein provided for. The very general provisions of this section of the Code are supplemented by Sections 5231-19 *et seq.* of the Code. In these sections provision is made for the creation of a board of naturopathic examiners, and the practice of naturopathy is defined. It is stated to embrace "the use and practice of psychological, mechanical and material health sciences to aid in purifying, cleaning and normalizing human tissues for preservation or restoration of health according to the fundamental principles of anatomy, physiology and applied psychology, as may be required. Naturopathic practice employs among other agencies, heat, light, water, electricity, psychology, diet, massage and other manipulative methods. These agencies are known as psychotherapy, suggesto-therapy, hydro-therapy, electro-therapy, mechano-therapy, biochemistry, external appliances, mechanical and electrical appliances, hygiene, first aid, sanitation, helio-therapy and dietetics. *Provided, however,* that nothing in Sections 5231-19 through 5231-22 shall be held or construed to authorize any naturopathic physician licensed hereunder to practice materia medica or surgery, or shall the provisions of Sections 5231-19 through 5231-22 in any manner apply to or affect the practices of osteopathy, chiropractic, christian science or any other treatment authorized or provided for by law for the cure and prevention of diseases and ailments."

These provisions of the Code were enacted in 1937 (Act 1937, p. 441).

In 1941 the regulations relating to the practice of naturopathy were further enlarged by provisions dealing with general educational qualifications and with professional

training. In addition to a pre-medical course, the statute requires a four year course of professional training in a college or university of naturopathy conferring a degree of Doctor of Naturopathy, and approved by the State Board of naturopathic examiners, as well as the holding of examinations for the issuance of licenses to practice naturopathy (Code, Secs. 5231-23, *et seq.*)

Section 5231-25 of the Code provides as follows:

"Practice of naturopathy defined. The use and practice of phytotherapy, minor surgery, obstetrics and gynecology, autotherapy and biologicals shall be made a part of and be included in the practice of naturopathy."

In section 5231-27 it is provided that "all naturopathic physicians who are in active practice", etc., are authorized to sign birth, death and health certificates and they are accorded the use of the State biological and chemical laboratories.

The undisputed testimony discloses that the respondent was having trouble with her tonsils. She testified that she had been sick for a couple of weeks, and that when the naturopath in question came to see her he told her that her tonsils would have to be taken out and that she should come to his office. She further testified that she "went to his hospital in West Columbia on the highway. There was a sign outside" with "Dr." preceding the name. He took out the respondent's tonsils and apparently the respondent then went home and was confined to her bed and unable to do anything for two weeks after that.

It would appear from the testimony of the respondent that for each of the two weeks prior to the tonsillectomy and for each of the two weeks succeeding the operation there was a claim under the policy. The record does not disclose which of these four weeks is covered by the claim for one week involved in the present action, though it is inferable, and appellant's counsel so states in his brief that the claim relates

to one of the weeks following the performance of the operation.

Thus it is clear, and no contention to the contrary is made by the appellant, that the respondent's claim was presented in accordance with the requirements of the policy if the practitioner in question who signed the insured's certificate is a "duly licensed and practicing physician" within the meaning of the policy:

At the time the respondent's claim arose the practitioner in question was certainly a "naturopathic physician" within the specific language of the applicable statute. He was practicing his profession within the indicated field, and in the absence of anything in the record to show the contrary, he must be deemed to have been duly licensed. He was then, a duly licensed and practicing naturopathic physician. He was therefore an eligible or qualified practitioner to sign the certificate required by appellant's policy unless the fact that he is a naturopathic physician, instead of being merely a "physician," disqualifies him.

Naturopathy is one of a number of fields in the art of healing which have been so far recognized by the General Assembly as accepted processes of preventive and curative medicine that stringent educational and licensing provisions have been imposed. Anyone engaged in the practice of any of such branches of medicine, after having been duly licensed, stands for all purposes in the position of a physician in the orthodox fields of medicine, at least to the extent that he limits his activities to the recognized scope of his particular profession. An osteopath, a homeopath, a chiropractor, a magnetic healer and a naturopath (Code, Sec. 5162) are like practitioners in the field of medicine, and it appears to us to be straining at a gnat to enter into a discussion of distinctions between a "practitioner of medicine" and a "physician."

We are not concerned with the question whether the naturopath involved in the present case went outside of the limits of his profession, or whether he violated

the law in performing the tonsillectomy. The specific act of removing respondent's tonsils· might be a violation of law as involving unauthorized surgical practice (but on this we are expressing no opinion). Here we find consultations and visitations between the respondent and naturopath which both preceded and followed the tonsillectomy, so that whether the tonsillectomy was an advisable surgical step, whether it was done in a proper manner, and whether it was done legally or illegally, do not reach the problem before us. The controlling fact is that before and after the operation the naturopath, as a licensed practitioner in a recognized field of medicine, attended the respondent for a period of more than seven consecutive days, while she was disabled by sickness and confined to her bed.

Having regard to the various specialties in the field of medicine recognized by the General Assembly, including naturopathy, and to the unwillingness of the appellant to accept the certificate of a naturopath, it may be that the appellant can make special provisions in its policies requiring that claims will be paid only when certified' by practitioners who are licensed in the field of *materia medica,* major surgery, etc. And they might except from their policies any liability arising out of or concurrent with the violation by a naturopath or other practitioner of the limitations of his profession. But there are no such limitations in the present policy. At most there is an ambiguity arising out of the use of the word "physician" when the appellant might have used a term of more limited significance.

Counsel for appellant recognize that the field of naturopathy as defined in the 1941 statute, and the educational and professional qualifications required of naturopaths under that Act might be deemed to change the situation which existed under the earlier statutes, under the terms of which the qualifications of naturopaths were of much more limited scope. And on this ground it is suggested that even if it be held that a naturopath qualified under the terms of the later legislation may be deemed to be a "duly

licensed and practicing physician." Such a practitioner does not come within the quoted words if he is qualified only under the earlier legislation and not under the 1941 statute. On this subject the record is silent. We, however, deem it wholly immaterial whether the naturopath in question qualified under the earlier or later acts, even though it be true that the policy was issued in 1938. It cannot seriously be contended that the meaning of the words "a duly licensed and practicing physician" is static. At all times and under all conditions the definition must be deemed to be that which is deducible from the legislation in force at the time when the question arises. If any other definition is deemed by the appellant to be material to the protection of its interests, that definition would have to be inserted in the policy by appropriate words of limitation.

If the defense of the appellant in this case had arisen out of alleged misrepresentations of the insured, in her application for the policy, that she had not been attended for some stated period by a duly licensed and practicing physician, and if it were a fact that the insured had been attended during the stated period by a naturopath, would the appellant's position be what it is in this case? See on this point *Continental American Life Insurance Co. v. Fritsche*, 37 Fed. Supp. 1.

While this is not in any sense controlling, we may advert to the fact that it is a matter of common knowledge that the people who purchase sick benefit policies of the industrial type constitute a large proportion of the patrons of practitioners of such branches of healing or medicine as naturopathy, and that it is generally believed by such people that they are dealing with licensed practitioners of medicine. In this belief they are encouraged by the legislation involved in the present case. It would be unjust, under such circumstances, to deprive these people of contract rights by means of a limitation of the meaning of the word "physician" to exclude the types of medical practice which to them are acceptable.

. On the precise question above discussed there appears to be no applicable ruling of this Court. Mention might, however, be made of the case of *State v. Barnes,* 119 S. C. 213; 112 S. E. 62, wherein it was held that a chiropractor must be deemed to be engaged in the practice of medicine, and to be subject to the regulations governing the licensing of practitioners of medicine, where the question is whether the chiropractor was engaged in the practice of medicine without having obtained a license. This case was decided prior to the enactment of the existing statutory provisions relating to the qualifications of chiropractors and the issuance of licenses to persons practicing in that field of the healing art. See Code, Secs. 5250-1, *et seq.*

That case and cases from other states cited by counsel on both sides, involve questions of statutory construction that we do not deem applicable in the present case. And of course the decisions of other states and of the federal courts are controlled by pertinent statutory provisions of the locus.

For the reasons above stated, the judgment appealed from is affirmed.

MESSRS. ASSOCIATE JUSTICES FISHBURNE, STUKES, TAYLOR and OXNER concur.