**James A. MILLER, Ronald H. Hoye, Sr., Lee Richardson, Plaintiffs,**

v.

**Norma H. JOHNSON, et al., Defendants.**

**Civ. A. No. 81–1345.**

United States District Court, District of Columbia.

June 8, 1982.

## MEMORANDUM OPINION

MacKINNON, Circuit Judge.

The present action is before the District Court * on a motion by the defendant federal judges and clerk of court to dismiss for failure to state a claim upon which relief may be granted. For the reasons set forth below, the federal defendants' motion to dismiss the complaint is granted, and the amended complaint against the Idaho Secretary of State, Cenarrusa, and the bonding companies, is dismissed by the court *sua sponte*, such dismissals to be with prejudice, and the action against all remaining defendants included by description or designated as unknown is dismissed without prejudice.

Parts I through VI of the opinion that follows set out the tortured history of this litigation; the remainder treats the several legal issues raised by the pleadings.

I. *The Complaint in Civil No. 81–0654 Against the Idaho Defendants*

On March 19, 1981 Ronald R. Hoye and James A. Miller of Coeur d'Alene, Idaho filed a *pro se* complaint in the United States District Court for the District of Columbia (Civil No. 81–0654). The designated defendants were: 35 individuals (apparently primarily residents of the state of Idaho including at least one federal judge and two state court judges), the United States of America, the District of Columbia, the state of Idaho, the American Medical Association, Inc., the Idaho Medical Association, 150 John Doe Persons unknown, and 150 John Doe unknown corporations, subsidiaries, affiliates or associations. The complaint in No. 81–0654 covered 168 pages of typewritten allegations on legal length paper that purported to allege 12 causes of action. It was studded with numerous vituperative allegations, incoherent statements and incomprehensible theories, all of which attacked the laws regulating the practice of medicine and those government officials,

* The author of this opinion is sitting by designation under authority of Title 28, United States Code, Section 291(c).

medical doctors and organizations who might play some part in the administration of such laws, insofar as they might impose allegedly illegal restraints upon the practice of *naturopathy*,[1] principally in the state of Idaho but also elsewhere to some extent. The allegations of the complaint include the claim that the State of Idaho is illegally organized, does not exist as a State, but merely as a Territory, and that consequently all of the actions of the Idaho government—from the issuance of traffic tickets and high school diplomas to the recognition of marriages and chartering of corporations, and "all enactment of all laws, rules, regulations, acts, proclamations, of any kind or description," Complaint at 161—are void and without effect. Plaintiffs also charge the existence of an illegal conspiracy of lawyers and public officials, subsidiaries, affiliates or associations (including federal and state judges), principally in Idaho, to apply the Idaho laws regulating the practice of medicine in an illegal manner insofar as the practice of naturopathy is concerned. This they term the "Idaho Watergate." The causes of action alleged included, *inter alia*, (1) destruction of constitutional republican government, (2) high crimes and misdemeanors, (3) treason, (4) criminal racketeering activities, (5) criminal conspiracy, (6) criminal monopoly, and (7) numerous criminal and other violations.[2] The complaint sought total damages of $16.4 billion of 25 different sorts ranging, in alphabetical order, from "actual" to "ultra" (this last only

---

1. "Naturopathy" is defined by Webster's New International Dictionary, 2d Ed.: "A system of physical culture and drugless treatment of disease by methods supposed to stimulate and assist nature." For other definitions *see Borland v. Johnson*, 88 F.2d 376, 377 (9th Cir.), cert. denied, 302 U.S. 704, 58 S.Ct. 24, 82 L.Ed. 544 (1937); *Perry v. Larson*, 25 F.Supp. 728, 729 (D.C.Fla.1938, aff'd, 104 F.2d 728 (5th Cir. 1939); *State ex rel. State Board of Medicine v. Smith*, 81 Idaho 103, 337 P.2d 938, 941 (1959); *Hahn v. State*, 78 Wyo. 258, 322 P.2d 896, 900 (1958); *Oosterveen v. Board of Medical Examiners*, 112 Cal.App.2d 201, 246 P.2d 136, 139 (1952); *Williams v. Capital Life & Health Ins. Co.*, 209 S.C. 512, 41 S.E.2d 208, 210 (1947); *State Board of Medical Registration & Examination v. Scherer*, 221 Ind. 92, 46 N.E.2d 602, 604 (1943); *Dare v. Board of Medical Examiners*, 127 P.2d 977, 984 (Cal.Ct.App.1942), aff'd 21 Cal.2d 790, 136 P.2d 304 (1943); *Millsap v. Alderson*, 63 Cal.App. 518, 219 P. 469, 473 (1923); *Ex parte Gerber*, 57 Cal.App. 141, 206 P. 1004, 1005 (1922).

2. The complaint in 81–0654 charged that the defendants did:

in a *knowing, willful, purposeful, deliberate* manner create, and impose by *TREASON* and *unlawful, illegal, corrupt, fraudulent, felonious, criminal* and *un-Constitutional ALIEN* form of government upon affiants in Idaho, and, more particularly stated, with specificity and certainty, infra, and complained of herein, upon Oath, and all said and such acts of the named defendants being proscribed by the said laws, especially enumerated by the United States Codes, as follows:

(1) 18 U.S.C. 242, 371, 1341, 1503 and 1961, et sequentia, and

(2) 42 U.S.C. 1983, 1985, 1986, and 1988 and all said and such laws above are hereby included by reference as if fully set out herein in full by FRCP 10, and further all said and such acts more specifically enumerated infra, have violated, denied, eliminated the fruits of the said "GUARANTEED" *Rights, Grants, Privileges* and *Immunities* secured to affiants, Inviolate, and Forever, in an by the said United States Constitution, as follows:

(1) Article 3, Judicial power of the United States,

(2) Article 1, § 8, Powers of Congress

(3) Article 4, § 1, Full faith and credit in Judicial Proceedings,

(4) Article 4, § 4, GUARANTEE of Constitutional Republican Form of Government to affiants,

(5) Article 6, Supremacy Clause, and Oaths of Judicial, executive and legislative officers of the United States and the State of Idaho, and all other States,

(6) Amendments 1, 4, 5, 6, 7, 8, 9, 10, 13, and 14 to said United States Constitution, and the violations of the *COMPLETE ORGANIC LAW*, and the Declaration of Independence and the United States Constitution is included herein by reference as if fully set out herein in full by FRCP 10, and the defendants and each of them did in a *knowing, willful, purposeful, deliberate* manner that was *unlawful, illegal, corrupt, fraudulent, felonious, criminal* and *un-Constitutional*, without *ANY* authority of law, commit crimes upon affiants and other unlawful acts, infra, and that all said and such acts, more specifically enumerated herein after by the named defendants, and each of them, is *CONTRARY TO THE FORM* of the United States Constitution and laws in such case made, provided and *GUARANTEED INVIOLATE* to affiants *FOREVER*, supra, and is against the peace and dignity of the United States and affiants.

"if necessary")—but not including "nominal." [3]

To present a *slight* flavor of the prolix, disjointed allegations contained in the complaint, there is set forth in the margin a *small* sample of some of the charges in the complaint.[4]

Civil Action No. 81–0645 was duly assigned to United States District Judge John H. Pratt. The court analyzed the complaint, found that it was "prolix, verbose, confusing, repetitious, and wholly unintelligible," [5] and dismissed the action "for failure to comply with Rules 8(a) [6] and 8(e) (1) [7]" but *without prejudice* and with leave to the plaintiffs "to amend their complaint to meet the requirements of Rule 8."

II. *Earlier Litigation in the Idaho State Courts*

It appears from the reported decision of the Idaho Supreme Court in *Eismann v.*

*Miller,* 101 Idaho 692, 619 P.2d 1145 (1980), of which judicial notice is taken, that Civil Action No. 81–0645 involves many of the same individuals that were parties defendant in that earlier *pro se* litigation brought in the state courts of Idaho by the same plaintiffs. Since the defendants here have not yet answered, we are unable to determine whether *Eismann* is *res judicata* with respect to 81–0654.[8]

The Idaho litigation included "some judges of the federal courts sitting in Idaho," as well as a state court judge that presided in a case brought by Miller *pro se* ; and the federal judges removed the case against them to the federal courts. It is also noteworthy that appellant Miller in the Idaho case attempted to make what he termed a "citizen's arrest" of the *presiding state court judge* after Miller engaged in what the Supreme Court of Idaho found

---

**3.** Civ. No. 81–0654, Complaint at 163. Damages claimed for each cause of action range from $500 million to $2 billion.

**4.** 'MEDICINE': a NOUN, is the NAME of a person, place or thing, it *IS*, it *EXISTS*, it *OCCUPIES SPACE AND TIME* in the REAL world, and CANNOT be 'practiced' no more than one can 'practice' concrete, 'practice' ocean, or 'practice' moon, and the term or noun 'MEDICINE' as a special 'BUZZ WORD' for the defendant *AMA* ... is clearly a deception ....

Civ.No. 81–0654, Complaint at 38.

[D]efendants named herein are *RARELY*, if ever, prosecuted for having committed crimes, and if so prosecuted, even *MORE RARELY*, go 'directly to jail', but ARE ALLOWED 'to pass go, and collect $200' with 'free chances' thrown in for good measure, and AT BEST receive a mere slap on the wrist for their criminal NO–NO ....

*Id.* at 53.

[A]nd defendants DONALDSON, SHEPARD and HARRIS in their *haste 'TO COVER THEIR ASS'* [sic] at all costs, have hacked out on onion skin paper and typewriter their version of an 'official oath' duly titled as such, and is just as 'official' as a piece of toilet paper ....

*Id.* at 70.

[A]nd the scretary [sic] did obtain thereby an $87,000 default judgment for the NAZI 'godfather' in Idaho wherein the corrupt judge, defendant Prather, *KNEW* that the said signature was forged ....

*Id.* at 86.

[All emphases and capitalizations in original.]

**5.** Judge Pratt stated:

It is impossible for any party or this court to understand plaintiff's alleged claims or damages. No responsive pleading could intelligently be filed by defendants. Accordingly, the action must be dismissed. *Gordon v. Green,* 602 F.2d 743 (5th Cir. 1979) (Brown, C.J.); *Bertucelli v. Carreras,* 467 F.2d 214 (9th Cir. 1972); *Koll v. Wayzata State Bank,* 397 F.2d 124 (8th Cir. 1968); *Karlinsky v. New York Racing Association, Inc.,* 310 F.Supp. 937 (S.D.N.Y.1970).

**6.** Rule 8(a), Federal Rules of Civil Procedure provides:

Claims for Relief. A pleading which sets forth a claim for relief ... shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for relief to which he deems himself entitled...

**7.** Rule 8(e)(1), Federal Rules of Civil Procedure provides:

Each averment of a pleading shall be simple, concise, and direct....

**8.** We would be required to give full faith and credit to the records and judicial proceedings of the Idaho courts. U.S.Const., Art. IV, Sec. 1; 28 U.S.C. § 1738; *Durfee v. Duke,* 375 U.S. 106, 116, 84 S.Ct. 242, 248, 11 L.Ed.2d 186 (1963); *Sanders v. Fertilizer Works,* 292 U.S. 190, 199, 204, 54 S.Ct. 677, 682, 78 L.Ed. 1206 (1934).

might be characterized as "a 'tirade' against the court."

Without going into the Idaho litigation further, suffice to say that Miller in some respects has acted in the present litigation in much the same manner as he apparently acted in the Idaho litigation, even to the extent of giving "Notice" to this court to have United States Marshals available in court so he could make citizens arrests, presumably on any federal judge who might rule against him. Plaintiffs assert the right, in the event their motions are not granted by any judge, to make such judges defendants in the pending action, or in a new action, and to make "citizens arrest" for such "*crimes.*" [9] (Emphasis added) Similarly in Idaho: "He (Miller) . . . manifested a pattern of initiating [pro se] litigation against any judge ruling against him."

To combat Miller's abuse of the Idaho courts and its procedures, the Supreme Court of Idaho, without passing on the merits of his claim, ordered all "clerks of . . . court . . . in the state of Idaho . . . to refuse to accept for filing any *pro se* pleading or documents of James A. Miller in any action or proceeding in any court of the state of Idaho without written leave of [the Supreme] Court . . ." The complete order of the Idaho Supreme Court, and the facts justifying it, are set forth in the opinion by Justice McFadden in *Eismann v. Miller*, 101 Idaho 692, 619 P.2d 1145 (1980).

**III. Plaintiffs' Reaction to Judge Pratt's Order Dismissing Complaint**

Following the order by Judge Pratt dismissing their complaint in No. 81–0654, plaintiffs Miller and Hoye responded, in a manner they have since repeated, by filing what they termed an "*Amended* Complaint, Motion in Affidavit."

In plaintiffs' *Amended* Complaint, the only amendment was to designate Judge Pratt as an additional defendant in the initial action that had been dismissed, without prejudice, by his order. This obviously was an improper amendment. From the questionable premise that their cause was just, plaintiffs alleged that Judge Pratt was without any authority in law to dismiss the complaint *because it was sworn to in their affidavit* and he had not found that they had committed intentional perjury. Such theory is fallacious. Thus, by their amended complaint Miller and Hoye sought to continue the same accusations that Judge Pratt had dismissed, and to add Judge Pratt as a defendant because they objected to his *judicial* decision dismissing the complaint.

With the added allegation to include Judge Pratt, the case thereafter was duly assigned to United States District Judge Norma Holloway Johnson. Judge Johnson reviewed the so-called amended complaint and "after several readings thereof" on May 6, 1981 filed a Memorandum and Order in which she reached substantially the same conclusion as Judge Pratt. She ruled that the complaint did "not conform to the Federal Rules of Civil Procedure 8(a) . . . [or] 8(e)(1)." [10] Judge Johnson found that: "No

---

**9.** *Miller v. Johnson*, No. 81–2303 (D.C.Cir.) (pleading in Court of Appeals dated 28th December 1981). In a document styled "Immediate and Emergency Motion in Affidavit to Assign a New Honest U.S. Judge," filed on May 11, 1982, plaintiffs assert that "NO United States Judge from *EITHER* the defendant-principal U.S. District Court, *OR*, the U.S. Appellate Court for the District of Columbia can be assigned this action" (capitals and emphases in original). Although such an assertion may occasionally warrant the appointment of judges from without the Circuit, *see, e.g., Bast v. Department of Justice*, 665 F.2d 1251 (D.C.Cir. 1981), plaintiffs' contentions here make it evident that it is their practice to bring the judicial

process to bear on any judge who fails to see merit in their claims. Accordingly, their motion is denied. *United States v. Will*, 449 U.S. 200, 213–16, 101 S.Ct. 471, 480–81, 66 L.Ed.2d 392 (1980).

**10.** The following excerpts from plaintiffs' amended complaint in number 81–0654 further illustrate noncompliance with Rule 8:

The complaint was made by sworn affidavit, and defendant Pratt did not make any attempt to prove that affiants did comit [sic] intentional perjury, the ONLY real defense to any part of the said sworn complaint;
Amended Complaint at 1.

pleading could be intelligently framed by defendants in response to the amended complaint." She accordingly ordered the amended complaint dismissed *without prejudice* and with the right to amend, on the authority of *Gordon v. Green*, 602 F.2d 743 (5th Cir. 1979), and *Koll v. Wayzata State Bank*, 397 F.2d 124 (8th Cir. 1968). The opinion in *Koll* by Judge Lay ruled that where no responsive pleading could intelligently be filed to a complaint, it should be *stricken* for failure to comply with Federal Rules of Civil Procedure 8(a) and 8(e), and the court should allow plaintiff sufficient time to amend and plead in compliance with the rules. 397 F.2d at 127. That was precisely the disposition ordered by Judges Pratt and Johnson.

IV. *The Present Complaint Against the United States District Judges (Civil No. 81–1345)*

Following the dismissal by Judge Johnson of the "Amended Complaint" in Civ. No. 81–0654, plaintiffs Miller and Hoye[11] on June 12, 1981 filed the present action, Civil No. 81–1345, in this court. This action is directed primarily against the two district judges who had dismissed their previous complaint *without prejudice, i.e.,* United States District Judges Norma H. Johnson and John H. Pratt. Also designated as defendants in this case are (then) Chief Judge William B. Bryant of the District Court, Mr. James F. Davey, the Clerk of the District Court, the "United States District Court for the District of Columbia" and 350 John Doe Unknown Persons.[12] It is this second complaint in the District Court, directed primarily against the United States District Court judges, that is the subject of this opinion.

The present complaint alleges that it is for: "1. FRAUD, 2. MAIL FRAUD, USING THE U.S. MAIL TO COMMIT FRAUD, 3. CRIMINAL VIOLATIONS AND CRIMINAL DENIAL OR CIVIL AND CONSTITUTIONAL RIGHTS, 4. CRIMINAL RACKETEERING ACTIVITIES, 5. HIGH CRIMES AND MISDEMEANORS." Damages and declaratory judgments are sought. This complaint covers 54 typewritten pages on legal-size paper and seeks total damages on all counts of $14.976 *trillion*—a fairly sizeable amount.

By reference, the complaint incorporates all the allegations of the complaint in Civil No. 81–0654 and the entire court record in that case. Complaint p. 5. However, before it sets forth its allegations against the principal defendants, the three judges and the clerk of court, it makes a great many extraneous general allegations and discusses a great many historical events and philosophical and constitutional theories. For instance, plaintiffs assert that, since the clerk accepted their fee for filing the complaint in 81–0654, the plaintiffs were criminally defrauded when the judges dismissed that complaint. That such theory is defective is obvious. Other theories asserted included the allegations that such "fraud" constituted a criminal violation of the official oaths of the judges and that it constituted taking plaintiffs' money under false pretenses.

Defendant Pratt did set up his own strawman, based upon his own subjective assumptions of what the defendants state of mind may or may not be, in relation to understanding the sworn complaint, wherein and whereby the first named defendants, as well as defendant Pratt, are all very cognizant of what they did that ought not to have been done, and that what they ought not to have done...
*Id.* at 2.

That the "IDAHO WATERGATE" makes the Nixon Watergate pale into insignificance in comparison, and Nixon's Watergate also could not be stated in "a short and plain statement" just as the "Idaho Watergate" cannot be reduced either, as further evidenced by the said Memorandum Order that took two (2) pages for the defendant to state his personal view and opinion, that is not law, wherein affiants did fully comply with FRCP 8 regardless of what defendant Pratt may pontificate as his opinion...
*Id.* Complaint at 3.

11. Plaintiffs in their recent filings included one Lee Richardson as a co-plaintiff.

12. Plaintiffs' Amended Complaint named three of the Doe defendants and described a number of others. *See* part VII *infra.*

In *subsequently* filed documents, plaintiffs also allege that it was illegal for the court to grant the timely motion of several of the defendants in the present action for extension of time to plead; that said defendants should have been held to be in default because they had no right to request additional time; and that the court accordingly improperly denied plaintiffs a default judgment against the original defendants when the suit was dismissed by the court, before it was necessary for defendants to plead. Plaintiffs contend that since their complaint was accompanied by an affidavit, and there was no finding that they had committed intentional perjury in their allegations, that the complaint could not be dismissed. Plaintiffs allege that decisions and orders by the judges in such circumstances constitute orders "criminally denying declaratory judgments for affiants [plaintiffs] against legally defaulted defendant-principals ..."

It appears with relative clarity, in any event, that the complaint in 81–1345 against Judges Johnson and Pratt is ultimately based on plaintiffs' objections to the judicial decisions those judges rendered within their jurisdiction as United States District Judges in Civil No. 81–0654. Plaintiffs' case against Chief Judge Bryant is based on the theory that he was "given notice of the [alleged] criminal mishandling of [plaintiffs'] case," [81–0654] by Judges Pratt and Johnson, and that as Chief Judge he "should have known" of their alleged misconduct and that of the Clerk. The "criminal mishandling" they refer to is the dismissal of the 81–0654 by Judge Pratt on March 20, 1981 (and later by Judge Johnson) and the return of their documents by the Clerk that plaintiffs attempted to file in that case *after* the case was dismissed and the file *closed.*

## V. Miscellaneous Allegations and Theories of Defendants

Sprinkled throughout plaintiffs' motions, pleadings, and memoranda, are several theories and contentions that should be commented upon.

### A. Judges' Oaths.

Plaintiffs claim that they have been refused copies of the various official oaths taken by defendants and other persons [13] and that trial judges are required to file in the record, at plaintiffs' request, a true and correct copy of their official oath. Complaint at 10–11. Plaintiffs place great emphasis upon this allegation and variants thereof in *all* their litigation. There is, however, no such requirement.

Plaintiffs cite 5 U.S.C. § 2906 (1976) as requiring a district judge to file a copy of his oath at their request. This section provides:

> The oath of office taken by an individual under section 3331 of this title shall be delivered by him to, and preserved by, the House of Congress, agency, or court to which the office pertains.

However, the referenced statute, 5 U.S.C. § 3331, only applies to individuals who take an oath "in the civil service or uniformed services ..." *Id.*[14] Judges serve in the judicial branch of the government and not in the "civil service or uniformed services," § 2906 does not apply to them. The oath for every "justice or judge of the United States" is prescribed by 28 U.S.C. § 453. The Administrative Office of the Courts keeps judges' personnel records under authority vested in the Director by 28 U.S.C. § 604, as the Clerk properly informed plaintiffs. The Clerk of Court is not required to furnish parties, or anyone else, copies of documents that are not in his files.

---

**13.** Certified copies were demanded of official oaths of President Reagan, The Chief Justice, The Attorney General, The Secretary of State, The Clerk of the Supreme Court, The United States Attorney and numerous judges and other officials.

**14.** 5 U.S.C. § 3331 provides:

An individual, except the President, elected or appointed to an office of honor or profit in the civil service or uniformed services, shall take the following oath ... This section does not affect other oaths required by law.

B. *The Application to Stay President's Appointment of Sandra Day O'Connor and Add Non-Compliant Judges as Defendants.*

One of the most bizarre legal (?) theories that plaintiffs seek to implement at various times in this litigation is their claim that they have a right to amend any litigation they may have pending at the moment to compel court action on some extraneous new matter.[15] In reliance on this assumed right, by motion in this case on July 17, 1981, plaintiffs sought a "Stay Order" to direct "President Ronald Reagan ... to Stay *All* Federal Appointments of United States Judges, *particularly ... Sandra O'Connor* to the U.S. Supreme Court ..." and any judge to a federal judicial vacancy in Idaho. (Emphasis added). A 21-page highly discursive memorandum, making numerous recitals of disjointed and irrelevant constitutional history, and featuring numerous other irrelevant and unsupportable considerations, was filed in support of plaintiffs' motion to stay the appointment of now-Justice O'Connor.

The purported authority to compel issuance of such order staying the appointment of Justice O'Connor was that "the U.S. Constitution *MANDATES* a *CONSTITUTIONAL REPUBLICAN* form of government "and the President has "NO CONSTITUTIONAL AUTHORITY" to replace the Republican Form of Government" with an unknown and *ALIEN* form of government." Motion for Stay Order, p. 2 (emphasis in original).

In the same authoritative vein, plaintiffs assert the right by notice to *add* judges who rule against them in interlocutory matters to the list of defendants in the *same litigation*, on the theory that upon such "notice" the judge becomes disqualified from further hearing the case. Plaintiffs further allege in their "Notice *in Affidavit*" that no judge can dismiss a cause of action that was sworn to, *i.e.*, by affidavit, without proving perjury and that any judge who engaged in any such "un-constitutional acts" "MUST and WILL BE disqualified from proper judicial adjudication, BY LAW, MUST BE identified, declared and *NAMED* a defendant *herein...*" Complaint at 13 (italics added). However, it is too plain for argument that an affidavit does not carry the force plaintiffs assert and that the right to have a judge disqualified because of interlocutory judicial decisions is nowhere near as broad as plaintiffs contend. *United States v. Will*, 449 U.S. 200, 101 S.Ct. 471, 66 L.Ed.2d 392 (1980). The weight to be accorded an affidavit is discussed in section E, *infra*.

C. *The Authority of the United States Attorney to Represent Federal Officers.*

■ Plaintiffs allege that the United States Attorney cannot legally represent the judges and clerk of court in this case. 28 U.S.C. § 516 provides otherwise, since all judges and clerks are officers of the United States.

> Except as otherwise authorized by law, the conduct of litigation in which the *United States, an agency*, or *officer thereof* is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General.

28 U.S.C. § 516. So not only may the United States Attorney, being an officer of the Department of Justice, represent the designated judges and the Clerk of Court who are federal officers, but may also represent the District Court which is an agency of the United States, and such representation is *reserved* to such "officers of the Department of Justice," *i.e.*, the United States Attorneys, or others designated by the Attorney General.

D. *Extension of the Time To Plead.*

■ Plaintiff contends that the court acted improperly in extending the time for the United States Attorney to plead or move in 81–1345. The complaint was served on June 1, 1981 on the Attorney General in his

---

**15.** See part VII *infra*.

official capacity, but he is not a party. Officers and agencies of the United States have 60 days within which to move or plead.[16] The United States Attorney, was served on June 18, 1981; Judge Pratt on July 22; Judge Bryant on July 22; Judge Johnson on July 23; and the Clerk of Court, Mr. Davey on July 22nd.

On August 4, 1981, the United States Attorney moved for an extension until September 1. The motion was thus timely and the order granting it was proper.

### E. The Asserted Conclusiveness of Plaintiffs' Sworn Complaint.

■ The Complaint in 80–1345 is sworn to by Miller and Hoye; and they give "NOTICE" therein that because the complaint is sworn to it cannot be "dismissed by *ANY* Constitutional Judge who has (1) taken, (2) subscribed, and (3) PUBLICLY RECORDED his official Oath as a United States Judge." Complaint at 7 ¶ 1. However, their oaths do *not* prohibit judges from dismissing complaints that are supported by the plaintiffs' affidavits. There is an adage among English barristers that: "The truth will out, *even in an affidavit.*" The same characteristic exists on this side of the Atlantic. Unsound legal theories, illogical conclusions and irrelevant facts, even in America where free speech has great protection, can also by judges be discovered in complaints behind the protecting influence of a notary's jurat; and laymen, swearing to the truth of *pro se* pleadings, do not foreclose a judge from ruling on the legal merit, or lack thereof, in such a pleading. In addition, where the action is barred by absolute judicial immunity (see discussion in Part VI, *infra* ) a sworn complaint against a judge, complaining of judicial decisions rendered within his jurisdiction, can be dismissed on the merits notwithstanding that the complaint is supported by an affidavit. Affidavits are not substantive evidence, *cf. United States v. Livingston,* 661 F.2d 239 (D.C.Cir.1981), and even if they were, no

sworn allegation here can overcome a judge's absolute immunity from suit. Plaintiffs' theory has no standing in the law.

### F. Citizens' Arrest.

■ Plaintiffs contend they have the right to, and will, make citizens' arrests of judges who rule against their contentions. Regardless of the existence of the general right of citizens' arrest, plaintiffs have no right to arrest judges, federal or state, because they may render interlocutory or final decisions contrary to plaintiffs' contentions. Plaintiffs' claim is a plain "threat" against the presiding judge and should be dealt with accordingly by the court and the United States Marshal.

Moreover, in the District of Columbia under D.C.Code §§ 23–581(a)(2) and 582 citizen's arrests are limited to felonies committed in their presence the offenses of assault, petty larceny, receiving stolen property, unlawful entry, burglary, grand larceny, unauthorized use of a motor vehicle or to aid a law enforcement officer or person who is authorized to make an arrest. No officer or person is authorized to arrest a judge for a decision rendered within his judicial jurisdiction.

### G. Habeas Corpus

Plaintiffs, out of a clear sky, also demand the immediate release of one Dr. Cyrus E. Maxfield, allegedly "convicted illegally and sentenced to 15 years in prison . . ." Complaint at 6, 9. Dr. Maxfield was named in the complaint in 81–0654 as one of the victims of the Idaho laws with respect to naturopaths. This demand has no relevance to the cause of action asserted against the judges and the clerk.

### H. Damages

One rule of pleading with which plaintiffs are in ample compliance is Fed.R. Civ.P. 8(a)(3), which requires the plaintiffs' complaint to contain "a demand for judgment for the relief to which he deems him-

---

**16.** Fed.R.Civ.P. 12(a) provides: "The United States Attorney or any officer or agency thereof shall serve an answer to the complaint . . . within 60 days after the service on the United States Attorney of the pleading in which the claim is asserted . . ."

self entitled." Plaintiffs here demand payment of $14.976 *trillion* in damages from the three defendant judges, the clerk, 350 unknown persons and the United States District Court for the District of Columbia. Since the court is an instrumentality of the United States Government, and the judges and clerk named as principal defendants are officers of the United States, it is the United States that would be required to pay practically all $14.976 *trillion* of plaintiffs' demand. This fact, coupled with the sheer magnitude of the relief requested, creates real problems in the fashioning of a proper remedy.

One source of considerable difficulty with the demand for damages in such amount lies in the fact that plaintiffs demand payment in "legal tender." 31 U.S.C. § 392 (1976) defines "legal tender" as "[a]ll coins and currencies of the United States (including Federal Reserve notes and circulating notes of Federal Reserve banks and national banking associations) regardless of when coined or issued." In the entire nation at year end 1981 there was only $124 billion in outstanding "legal tender," *i.e.,* currency in circulation. Even the gross national product in 1980 was under $3 trillion, *i.e.,* $2.626 trillion. Bureau of Economic Analysis, U.S. Commerce Department. Confiscation of the nation's total gross national product for over five years would therefore perhaps suffice to pay plaintiffs' damages. Borrowing by the United States could also be resorted to, but Congress has imposed a present total debt ceiling of $1.250 trillion, of which $1.020 trillion already exists in outstanding United States debt. A substantial amendment by Congress to the United States' debt limit would therefore be necessary if the government decided to resort to borrowing to pay plaintiffs' damages. Any way the problem is approached, it runs into a little money. Certainly few people suspected, prior to the filing of the present action, that the practice of naturopathy was as profitable as the damages here alleged and *sworn to* would seem to indicate.

VI. *The Defendants' Motion to Dismiss the Complaint.*

On August 31, 1981 the defendant judges and the clerk, represented by the United States Attorney for the District of Columbia, filed a Motion to Dismiss plaintiffs' action (1) for failure to state a claim upon which relief may be granted, (2) for failure to comply with Rule 8, Federal Rules of Civil Procedure, and (3) for insufficiency of service of process. *Plaintiffs have made no response to said motion to dismiss.*

On October 30, 1981 this court issued an order (1) allowing the plaintiffs until November 23, 1981 to file and serve any responsive pleading, and (2) granting the defendants 10 days to reply thereto. Said order also referred to plaintiffs' contention that they "are not required to serve" the United States Attorney with their pleadings in this case, and advised Plaintiffs that their failure to effect due and proper service of pleadings under Rule 5(a), Fed.R. Civ.P., upon the United States Attorney would preclude consideration by this court of any motions or other matters that were not so duly served. Plaintiffs were therefore ordered to serve the United States Attorney with all pleadings and papers filed in the action "if plaintiffs desire to have the Court rule [thereon]." The order further stated that when the pleadings were duly served the motion of the government for dismissal would be set for hearing. *It does not appear that plaintiffs ever duly served the United States Attorney.*

After the time had elapsed for the filing of further pleadings and memoranda, on December 9, 1981 the court by order set January 7, 1982 "for the hearing of all issues raised by the motions and pleadings, [such] hearing [to] continue until all parties are fully heard." The parties were once again invited before said hearing to serve and file a statement of issues and supporting memoranda.

The court's order went to plaintiffs by certified mail and its receipt was duly acknowledged by them on December 12, 1981

in Coeur d'Alene, Idaho. This purely procedural order, calling for the normal and customary service of motions and pleadings, caused plaintiffs on December 14, 1981 to petition the United States Court of Appeals for the District of Columbia Circuit for interlocutory review thereof. This petition was denied promptly by the Court of Appeals on December 22, 1981.

Plaintiffs have made no further filings in the District Court. With respect to the hearing set for January 7, 1982, the United States Attorney offered to waive oral argument and submit its motion to dismiss for decision on the basis of the record, pleadings and filed briefs and memoranda. This court declined to cancel oral argument and the motion to dismiss came on for hearing, as ordered, on January 7, 1982. *Plaintiffs failed to appear and made no attempt to contact the court.* The United States Attorney appeared and, at the court's request, argued several points raised by the pending motion to dismiss. At the conclusion of argument, the matter was duly submitted on the pleadings, briefs and the oral argument of defendants.

VII. *The Absolute Immunity of Judges.*

■ With respect to their judicial decisions in Civil No. 81–0654 dismissing the complaint, Judges Pratt and Johnson are shielded by absolute judicial immunity and cannot be subjected to suit.

A. *Controlling Decisions.*

It was decided by the Supreme Court in *Randall v. Brigham,* 7 Wall. 523, 19 L.Ed. 285 (1869) that judges are not answerable "to private parties in civil actions for their judicial acts, however injurious may be those acts, and however much they may deserve condemnation, unless perhaps where the acts are palpably in excess of the jurisdiction of the judges, *and are done maliciously or corruptly."* 7 Wall. at 537 (emphasis added).

In the next case that considered judicial immunity two years later, *Bradley v. Fisher,* 13 Wall. 335, 351, 20 L.Ed. 646 (1871), the Court ruled out the qualifying words in *Randall v. Brigham* that are italicized above. In recognizing that judicial immunity was even more extensive than the court had previously held, the opinion by Justice Field stated:

[A] general principal of the highest importance to the proper administration of justice [is] that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself ... and that judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, *even when such acts are in excess of their authority, and are alleged to have been done maliciously or corruptly.*

*Id.* at 347, 351. (Emphasis added)

More recently, the Supreme Court ruled that this doctrine of judicial immunity even shields judges in their judicial acts from suits under Section 1 of the Civil Rights Act [17] notwithstanding that such Act makes *"every person"* liable who, acting under color of state law, deprives another person of his civil rights. *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). In so ruling Chief Justice Warren declared:

Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction, as this Court recognized when it adopted the doctrine, in *Bradley v. Fisher,* 13 Wall. 335 [20 L.Ed. 646] (1872). This immunity applies even when the judge is accused of acting maliciously and corruptly, and it "is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." (*Scott v. Stansfield,* L.R. 3 Ex. 220, 223 (1868), quoted in *Bradley v. Fisher, supra,* 349, note, at 350.) It is a

---

17. 42 U.S.C. § 1983 (1976).

judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation.

386 U.S. at 553–554, 87 S.Ct. at 1217–18.

The Court decisions in *Bradley v. Fisher, supra,* and *Pierson v. Ray, supra,* were followed by Justice White in *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), which continues the holding that:

A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors.

435 U.S. at 359, 98 S.Ct. at 1106.

In cases involving attempts to impose liability on judges for their judicial decisions, it must be determined whether at the time the judge took the challenged action he had jurisdiction over the subject matter before him. *Id.* at 356, 98 S.Ct. at 1104. Here, Judges Pratt and Johnson were clearly acting within their jurisdiction as judges on cases duly assigned to them for judicial decision. That their actual judicial decisions were substantively and procedurally proper is, strictly speaking, immaterial, but does further indicate the groundless nature of the plaintiffs' complaint in 81–1345.

■ The complaint against Chief Judge Bryant is based generally on the theory that *as Chief Judge* it was within his jurisdiction and authority to prevent Judges Pratt and Johnson from dismissing plaintiffs' complaints, that he owed a duty to plaintiffs to so act here, but that he improperly failed and refused to do so. This count of the complaint fails, for one reason, because its premise is unfounded and fallacious; neither the Chief Judge nor any other judge of the United States District Court has any such authority over any other district judge with respect to his judicial decisions. Even if Chief Judge Bryant *as Chief Judge* did possess the authority plaintiffs allege, according to their theory his conduct would be *within* his jurisdiction as a judge and he would be absolutely immune from suit.

As for the authority of the Chief Judge over the Clerk of Court, even if he had some authority over the Clerk, he has no duty toward plaintiffs to order the filing of documents out of time. Moreover, it can be concluded from the allegations of the complaint that the Clerk of Court acted properly when he returned papers that plaintiffs submitted for filing in Civil Case No. 81–0654 after that case was dismissed and *closed* by order of the court. The allegations against Judge Bryant and the Clerk are frivolous.

■ The allegations against James F. Davey, the Clerk of the United States District Court for the District of Columbia are also imprecise, ambiguous, prolix, and in many respects incomprehensible. Without precisely stating what documents and records they are talking about plaintiffs allege that the Clerk acted criminally to maintain simultaneously a public file record and a "secret file not of record" in case No. 81–0654 with affiants documents withheld in secret and not posted to the public docket sheet. From a reading of the complaint and the appended exhibits (one of which is the docket sheet) it becomes apparent that plaintiffs present a question purely of law and that they have not responded to the defendant's motion to dismiss. The question of law boils down to whether a clerk of court owes a duty to accept documents for filing in a case that has been dismissed by orders of the court. With respect to this aspect of their complaint, plaintiffs' allegations are a gross exaggeration of the facts and their conclusions are unfounded in law. In refusing to file these documents *after* the case was "Closed" by court order dismissing the case, it is ruled, as a matter of law, on the basis of the facts alleged in plaintiffs' complaint that the Clerk of the District Court was under no obligation or duty to file such documents.

Plaintiffs also claim that defendant Davey did not properly post the "legally *amended* complaint and motion in affidavit" on the docket sheet. However, without passing on the *legality* of the "amended complaint," the docket sheet appended to the complaint has been examined and this claim also is found to be without substance. The docket sheet indicates that the Clerk's office handled plaintiffs' papers properly: the "Amended Complaint and Motion in Affidavit" were mailed on March 23, 1981 and were filed on April 7, 1981 and docketed as of the same day. In any event, the amendment naming Judge Pratt as a defendant was improper and plaintiffs would not suffer any legal harm if it were never filed or docketed. Plaintiffs had no right to file such amendment.

Therefore, it appears conclusively from plaintiffs' complaint, exhibits and referenced documents that the count against Clerk Davey is without merit.[18] The entry of summary judgment dismissing the count against the Clerk is therefore also appropriate.

■ It thus appears that the causes of action asserted against District Judges Pratt, Johnson and Bryant are each based on judicial activity required by their official duties and within their statutory jurisdiction. Because the purpose of an *absolute* immunity is to relieve those enjoying it from even the burden of having to defend their conduct before the courts, the very *filing* of such lawsuits violates the official immunity of each of the named judges as articulated in *Stump, supra,* and requires dismissal under Rule 12(b)(6). To the same effect are *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967); *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335,

351, 20 L.Ed. 646 (1872); *Randall v. Brigham*, 74 U.S. (7 Wall.) 523, 535, 19 L.Ed. 285 (1868); *Moore v. Burger*, 655 F.2d 1265 (D.C.Cir.1981); *Clark v. Taylor*, 627 F.2d 284, 286 (D.C.Cir.1980). Upon the authority of *Stump* and the foregoing decisions the complaints against Judges Pratt, Johnson and Bryant are dismissed *with prejudice* for failure to state a claim upon which relief can be granted.

The count against Clerk Davey is also dismissed *with prejudice,* for failure to state a claim upon which relief may be granted, for failure to prosecute, and because it conclusively appears from the complaint, exhibits and referenced documents that the case is without merit. Since the complaint against the United States District Court for the District of Columbia was based upon the deficient complaint against the judges and the clerk, and those cases are dismissed, the complaint also falls as to the court and it is dismissed with prejudice.

## VIII. *The May 11th Filings and Plaintiffs' Amended Complaint*

On May 11, 1982, when the foregoing part of this opinion was practically completed, plaintiffs filed an additional 93 typewritten legal length pages of pleadings, notices, motions, demands, affidavits, exhibits, certificates and a proposed order. Basically, there were five new documents. They will be described and ruled upon in the order of their filing.

(1) The first document is entitled "Amended Complaint to Identify and Name Previous John Doe Defendant-Principals, In Affidavit." This pleading incorporates by reference all the allegations in cases No. 81–0654 and 81–1345. Since 81–0654 was dismissed, its allegations need not be fur-

---

18. An opinion by Justice Todd in *Brown v. Dayton Hudson Corporation*, 314 N.W.2d 210 (Minn.1981) in a related field, holds that an assistant prosecutor, who was exercising the duties of his office, is entitled to "absolute immunity" from a lawsuit for malicious prosecution brought by a defendant he had charged with issuing a worthless check when it was eventually found the case was based on mistaken identity. *Imbler v. Pachtman*, 424 U.S. 409,

96 S.Ct. 984, 47 L.Ed.2d 128 (1976), also holds that prosecutorial activities of a state prosecutor were an integral part of the judicial process and were "absolutely immune" from a civil suit for damages under § 1983. The clerk of court in his assigned activities seems no less an "integral part of the judicial process," 424 U.S. at 416, 96 S.Ct. at 988. But regardless of his immunity here, he acted properly.

ther considered. The Amended Complaint also attempts to add *new* "Defendant-Principals" to the defendants in Case No. 81–1345 in which the federal judges and the Clerk of court are defendants. The newly named defendants are Peter T. Cenarrusa, the Idaho Secretary of State, and two companies who bond the employees and public officials of Idaho for a total of $4 million, the United Pacific Insurance Company and Safeco Insurance Company of America. Also identified as defendants were any and all other insurance carriers who might subsequently be discovered to be liable on the bonds of Idaho public officials.

The Amended Complaint alleges that the Secretary of State is guilty of various federal crimes, including treason as proscribed by 18 U.S.C. § 2381, because he allegedly violated certain provisions of the Civil Rights Act, to wit, 42 U.S.C. § 1983 (Civil Action for Deprivation of Rights); § 1985 (Conspiracy to Interfere with Civil Rights); and § 1986 (Action for Neglect to Prevent Conspiracy). Violations of such statutes do not constitute treason which consists of making war against the United States or adhering to its enemies. 18 U.S.C. § 2381.[19] Plaintiffs' allegation of treason is farcical.

■ In substance the theory of plaintiffs' amended complaint is that the Secretary of State of Idaho has not taken the proper official oath, is thus acting in excess of his authority, and is therefore prohibited from supervising elections under Idaho's election laws. This theory is deficient in law because the oath taken by the Secretary of State complies with the United States Constitution and with the Idaho statute to the extent that it is valid. In 1963 the Idaho legislature provided that officials and employees in the State of Idaho must take a statutory oath (1) to support the Constitution of the United States and the

Constitution and laws of Idaho, and (2) in addition to take a so-called "loyalty and test oath." The oath to support the Constitutions of the United States and Idaho and its laws was held to be valid, but the loyalty and test oath features were determined to be unconstitutional, by a three-judge federal court in *Heckler v. Shepard*, 243 F.Supp. 841 (D.C.Idaho 1965).[20] The court's judgment declared that the loyalty oath features of the statute violated the due process requirements of the Fourteenth Amendment and issued an injunction prohibiting enforcement of that portion of the oath held unconstitutional by the court's decision. Plaintiffs' Amended Complaint now filed in 81–1345 is principally based on a refusal to recognize the controlling effect of the federal court's decision in *Heckler*.

Plaintiffs' Amended Complaint asserts that the reliance placed by the Secretary of State upon the *Heckler* injunction is improper. This court disagrees with that theory. The decision in *Heckler v. Shepard* is controlling and it appears from the exhibits to the Amended Complaint itself that P. T. Cenarrusa, on the 20th day of December 1978, took a valid and adequate oath to "support the Constitution of the United States, and the Constitution and laws of the State of Idaho [and to] ... faithfully discharge all the duties of the office of Secretary of State of the State of Idaho for [the] four year term effective January 1, 1979." (Exhibit A). This oath complies with United States Constitution, Article VI, Clause 3, which provides "all executive ... officers, both of the United States and of the several states, shall be bound by oath or affirmation to support this Constitution ..." The oath also complies with the *valid* part of the Idaho statute, I.C. 59–401 that remained after the decision in *Heckler*. It thus appears from the face of the Amended

---

**19.** 18 U.S.C. § 2381 provides:

Whoever, owing allegiance to the United States, levies war against them or adheres to their enemies, giving them aid and comfort within the United States or elsewhere, is guilty of treason and shall suffer death, or shall be imprisoned not less than five years

and fined not less than $10,000; and shall be incapable of holding any office under the United States.

**20.** The decision of the three-judge court fully sets forth all the relevant facts and the applicable law and they need not be repeated here.

Complaint that plaintiffs' entire theory is unsound, not supported by law, contrary to the controlling decision in *Heckler v. Shepard* and fails to state a cause of action against Cenarrusa upon which relief can be granted. Because the asserted liability of the insurance carriers identified in the Amended Complaint is premised wholly on the contention that the officials covered by the bonds issued by the carriers are in default, the absence of any of those officials as defendants herein makes recovery against the carriers impossible. On the court's own motion, the Amended Complaint is therefore dismissed with prejudice [21] as to the defendants identified therein.

(2) The second document filed is a Motion for a Stay of the Elections in Idaho set for May 25th. The basis for the motion was the same untenable theory alleged in the Amended Complaint. This motion was denied by a separate order of this court entered on May 24, 1982.

 Also included with the filings were the third and fourth documents: (3) a "Demand for Martial Law in Idaho addressed to the President of the United States" and (4) a communique to "All Voters of Idaho, and Media." This demand and communique are further exemplifications of the same false theory alleged in the Amended Complaint and referred to above. While these two documents are filed with the papers in this case, they are neither pleadings nor relevant to any pleadings filed herein and are therefore stricken as surplusage.

(5) A fifth document entitled "Motion to Assign a New and Honest Judge" was addressed to the Chief Judge of the Court of Appeals and has been referred to him for consideration.

## IX. *Plaintiffs' Litigative Tactics*

The plaintiffs' abuse of the court and its processes in these cases fully justifies that consideration be given to some future restraint of plaintiffs' litigious tendencies.

Their misunderstanding of legal theories and procedures appears to be part of an ingrained obsession that does not respond to rational explanation or decision. In such cases courts are moved to take affirmative steps to protect and conserve their resources. The Supreme Court of Idaho after its experience with plaintiffs' abuse of the courts and legal procedures in that state found it necessary to prohibit plaintiffs from filing any *pro se* complaints without prior approval of the Supreme Court of Idaho. *Eismann v. Miller*, 101 Idaho 692, 619 P.2d 1145 (1980).

The United States Courts in the District of Columbia recently had a similar experience with a different litigant. In *In Re Green*, 669 F.2d 779 (D.C.Cir.1981), the Court of Appeals directed the District Court to enter an order enjoining *pro se* litigant Green from filing any action except with the prior consent of the District Court. *See also Board of County Commissioners v. Howard*, 640 P.2d 1128 (Colo.1982). Some such remedy may be necessary with plaintiffs as, in some respects, the abuse in this case based on the action of the court in 81–0654 is even worse than in *Green* because plaintiffs are directing their vituperative complaints, motions, notices, demands, etc., at the very judges who must decide their cases and who have absolute immunity from such civil suits. If plaintiffs continue such tactics, attempting to pick their judges and courts and to castigate and designate as a defendant every judge who rules against them on any matter, however small, some permanent restriction may be necessary and payment of attorney's fees may be required. However, for the time being, my decision is for the court to defer the imposition of such remedies until the next time, if there is a next time, that the plaintiffs resort to such serious abuse of the court and its processes.

## X. *Conclusion*

As *pro se* complainants, appellants are entitled to have their lack of ability and

---

**21.** Although defendant Cenarrusa has not appeared in this action and thus has filed no motion for dismissal or summary judgment, entry of judgment is nonetheless appropriate here. *See Lowenschuss v. Kane*, 520 F.2d 255, 261 (2d Cir. 1975); *Kennedy v. Whitehurst*, 509 F.Supp. 226, 231–32 (D.D.C.1981).

knowledge of legal principles and procedures given sympathetic consideration, *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972), and their complaint construed to do substantial justice. *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Plaintiffs complain that their complaint has been unjustly characterized as a "joke by some." It is certainly no joke to this writer to be required to read, analyze and come to a decision on the 600 pages of pleadings, memoranda and exhibits that plaintiffs have set forth in 81–1345 and incorporated therein by reference.

It was impossible for the court to deal with the merits of plaintiffs' claims in 81–0654 that lie hidden beneath their barrage of disjointed allegations and mistaken legal theories that are levied against practically the entire government and large segments of its citizens and officials, most of whom to date seem to have disagreed with plaintiffs in some particular. Plaintiffs' incomprehensible and largely conclusory allegations, accusations and declarations so confuse their whole case, if they have one, that parties and courts were and are unable to consider it. Because of the lack of specificity, and the disjointed generalized allegations and declarations, it was impossible for any person to frame a responsive pleading to plaintiffs' complaint in No. 81–0654 and Judges Pratt and Johnson were thoroughly justified in ordering dismissal, without prejudice, with leave to amend.

As for the complaint in 81–1345, for reasons set forth above it is ordered dismissed *with prejudice* to plaintiffs for failure to state a claim upon which relief may be granted. Their case must be dismissed basically because the judges here designated as defendants were acting within their jurisdiction and have absolute immunity from any civil suit for damages or other civil relief. Such disposition of 81–1345 makes it unnecessary to rule upon (1) the compliance of the complaint with Rule 8(a) and (e), (2) plaintiffs' refusal to appear and prosecute their claim, and (3) whether the court was required to rule on plaintiffs' motions and complaints because of the numerous instances where it appears from the record that there was a failure on the part of plaintiffs to serve opposing counsel with process and pleadings.

The above may be considered as the court's findings of fact herein. It, therefore, follows as a conclusion of law that plaintiffs' Complaint and Amended Complaint with respect to the named and identifiable defendants must be dismissed *with prejudice*, that the complaint with respect to the remaining defendants is dismissed without prejudice, and that the demand upon the President for Martial Law in Idaho and the communique to "All Voters of Idaho and Media" be stricken as surplusage, for reasons above set forth.

An Order follows disposing of the case in accordance with the foregoing opinion.

### ORDER

On consideration of plaintiffs' complaint, amended complaint and all exhibits and matter incorporated therein by reference or referred to in the record, and the government's motion to dismiss, on the basis of the entire record, pleadings and proceedings herein, it is hereby

*Ordered and Adjudged*, that plaintiffs' complaint, and amended complaint, for reasons set forth in the foregoing MEMORANDUM OPINION, are

(1) with respect to defendants Johnson, Pratt, Bryant, Davey, Cenarrusa, the United Pacific Insurance Company, Safeco Insurance Company of America and the United States District Court for the District of Columbia, dismissed with prejudice for failure to state a claim upon which relief can be granted;

(2) with respect to the remaining defendants, and every other person designated or described by plaintiffs as a defendant and the 350 John Doe Persons Unknown, *sua sponte* dismissed without prejudice for failure to prosecute; and

(3) the Demand upon the President for Martial Law in Idaho and the Communique to "All Voters of Idaho and Media" are stricken as surplusage.